**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| CHRISTOPHER M. KNOTT, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CASE NO. 2:22-cv-313-JRG-RSP |
| | § | |
| COMPLETION EQUIPMENT RENTAL, INC., | § | |
| | § | |
| | § | |
| *Defendant*. | § | |
| | § | |

**CLAIM CONSTRUCTION ORDER**

Before the Court is the opening claim construction brief of Plaintiff Christopher M. Knott ("Plaintiff") (Dkt. No. 25, filed on November 28, 2023), the response of Defendant Completion Equipment Rental, Inc. ("Defendant") (Dkt. No. 26, filed on December 12, 2023), and the reply of Plaintiff (Dkt. No. 28, filed on December 19, 2023). The Court held a claim construction hearing on January 9, 2024. Having considered the arguments and evidence presented by the parties at the hearing and in their claim construction briefing, the Court issues this Claim Construction Order.

## Table of Contents

**I. BACKGROUND................................................................................................. 3**
**II. LEGAL PRINCIPLES ........................................................................................ 5**
**III. CONSTRUCTION OF AGREED TERMS ............................................................ 10**
**IV. CONSTRUCTION OF DISPUTED TERMS ......................................................... 12**
A. "pre-pressurize" / "pre-pressurizing"............................................................. 12
B. "pressurize the lubricant"............................................................................. 21
C. "maintaining / maintain the pressure" ........................................................... 26
D. "packed" [with lubricating fluid].................................................................... 30
E. "pre-set pressure"........................................................................................ 34
**V. CONCLUSION................................................................................................. 37**

## I. BACKGROUND

Plaintiff brings suit alleging infringement of U.S. Patent Nos. 10,358,891 (the '891 Patent), 10,513,906 (the '906 Patent), and 10,577,888 (the '888 Patent). The patents are related and share the same specifications with the other patents-in-suit. Because the patents-in-suit each share a common specification, it should be understood that citations to one of these three patents also encompasses the corresponding citations to the other two patents. In general, specification citations herein are to the '891 patent for convenience.

In general, the patents-in-suit describe a device or process for lubricating valve cavities of a hydraulic fracturing tree by injecting lubricant under high pressure into the valve cavities before hydraulic fracturing fluid is pumped through the valve bore. Lubricating the control valves in this way reduces or eliminates scarring of the internal components by equalizing pressure of the fracturing fluid and lubricant, thereby preventing fracturing fluid from entering the valve cavities. The Abstract of the '891 patent is reproduced below:

> A method for pre-pressurizing fluid control valves is provided. The fluid control valves may be part of a hydraulic fracturing tree, or may be part of a so-called zipper frac manifold. In either instance, the method uses a lubrication unit for pre-pressurizing the cavity of a valve by injecting lubricant under high pressure. The fracturing tree or zipper frac manifold is useful for conducting hydraulic fracturing operations as part of the completion of a well. Each control valve has an upper lube fitting extending to an upper lube channel which communicates with an upper pocket. Similarly, each control valve includes a lower lube fitting extending to a lower lube channel which communicates with a lower pocket. A pressurized lubricating fluid is forced into the lube fittings to pre-pressurize the control valves prior to the fracturing fluid passing through the control valves. The method of pre-pressurizing the control valve restricts scarring by the fracturing fluid of the internal components of the control valve by equalizing pressure.

Claim 1 of the '891 patent is exemplary and is reproduced below:

> A method of pre-pressurizing a valve, comprising:

placing a lubricant pressurization system onto a portable platform, the lubricant pressurization system comprising:

an air compressor;

a lubricant reservoir and associated fluid pump;

a high pressure air hose for delivering compressed air from the air compressor to the lubricant reservoir; and

a high pressure lubricant line;

moving the portable platform with the lubricant pressurization system to a well site;

placing the high pressure lubricant line in fluid communication with one or more fluid control valves associated with a frac tree placed over a wellbore;

actuating the air compressor to power the fluid pump and to pressurize the lubricant within the high pressure lubricant line;

moving gates associated with the one or more fluid control valves into their open positions;

injecting lubricating fluid from the high pressure lubricant line into a cavity of each of the fluid control valves in order to pre-pressurize the respective cavities to a pressure of at least a determined formation fracturing pressure for a wellbore at the wellsite;

after the pre-pressurizing, injecting a hydraulic fracturing fluid down a central bore of the fracturing tree and down flow channels of the one or more fluid control valves while the respective cavities are packed with the lubricating fluid; and

maintaining the pressure in the high pressure lubricant line while injecting the hydraulic fracturing fluid through the one or more fluid control valves and down the wellbore.

## II. LEGAL PRINCIPLES

### A. Claim Construction

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.' " *Phillips*, 415 F.3d 1303 at 1312 (en banc) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). The Court first examines a patent's intrinsic evidence to define the patented invention's scope. *Id*. at 1313–14; *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). Intrinsic evidence includes the claims themselves, the specification and the prosecution history. *Phillips*, 415 F.3d at 1312–13; *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004). The general rule—subject to certain specific exceptions discussed *infra*—is that each claim term is construed according to its ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the patent. *Phillips*, 415 F.3d at 1312–13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003); *see also Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336, 1347 (Fed. Cir. 2014) ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time.").

"The claim construction inquiry. . . begins and ends in all cases with the actual words of the claim." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998). "[I]n all aspects of claim construction, 'the name of the game is the claim.' " *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1298 (Fed. Cir. 2014) (quoting *In re Hiniker Co.*, 150 F.3d 1362, 1369 (Fed. Cir. 1998)). First, a term's context in the asserted claim can be instructive. *Phillips*, 415 F.3d at 1314. Other asserted or unasserted claims can also aid in determining the claim's meaning, because claim terms are typically used consistently throughout the patent. *Id.*

Differences among the claim terms can also assist in understanding a term's meaning. *Id*. For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation. *Id*. at 1314–15.

"[C]laims 'must be read in view of the specification, of which they are a part.' " *Id*. (quoting *Markman v. Westview Instruments, Inc*., 52 F.3d 967, 979 (Fed. Cir. 1995)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.' " *Id*. (quoting *Vitronics Corp. v. Conceptronic, Inc*., 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex, Inc. v. Ficosa N. Am. Corp*., 299 F.3d 1313, 1325 (Fed. Cir. 2002). In the specification, a patentee may define his own terms, give a claim term a different meaning than it would otherwise possess, or disclaim or disavow some claim scope. *Phillips*, 415 F.3d at 1316. Although the Court generally presumes terms possess their ordinary meaning, this presumption can be overcome by statements of clear disclaimer. *See SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc*., 242 F.3d 1337, 1343–44 (Fed. Cir. 2001). This presumption does not arise when the patentee acts as his own lexicographer. *See Irdeto Access, Inc. v. EchoStar Satellite Corp*., 383 F.3d 1295, 1301 (Fed. Cir. 2004).

"Although the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims." *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)); *see also Phillips*, 415 F.3d at 1323. "[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims

absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004).

The prosecution history is another tool to supply the proper context for claim construction because, like the specification, the prosecution history provides evidence of how the U.S. Patent and Trademark Office ("PTO") and the inventor understood the patent. *Phillips*, 415 F.3d at 1317. However, "because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.* at 1318; *see also Athletic Alternatives, Inc. v. Prince Mfg.*, 73 F.3d 1573, 1580 (Fed. Cir. 1996) (ambiguous prosecution history may be "unhelpful as an interpretive resource").

Although extrinsic evidence is useful, it is "less significant than the intrinsic record in determining the legally operative meaning of claim language." *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc.*, 388 F.3d at 862) (internal quotation marks omitted). Technical dictionaries and treatises may help a court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but technical dictionaries and treatises may provide definitions that are too broad or may not be indicative of how the term is used in the patent. *Id*. at 1318. Similarly, expert testimony may aid a court in understanding the underlying technology and determining the particular meaning of a term in the pertinent field, but an expert's conclusory, unsupported assertions as to a term's definition are not useful. *Id*. Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id*.

**B. Departing from the Ordinary Meaning of a Claim Term**

There are "only two exceptions to [the] general rule" that claim terms are construed according to their plain and ordinary meaning: "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of the claim term either in the specification or during prosecution." *Golden Bridge Tech., Inc. v. Apple Inc.*, 758 F.3d 1362, 1365 (Fed. Cir. 2014) (quoting *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012)); *see also GE Lighting Solutions, LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed. Cir. 2014) ("[T]he specification and prosecution history only compel departure from the plain meaning in two instances: lexicography and disavowal."). "The standards for finding lexicography or disavowal are 'exacting.' " *GE Lighting Solutions*, 750 F.3d at 1309.

To act as his own lexicographer, the patentee must "clearly set forth a definition of the disputed claim term," and "clearly express an intent to define the term." *Id.* (quoting *Thorner*, 669 F.3d at 1365); *see also Renishaw*, 158 F.3d at 1249. The patentee's lexicography must appear "with reasonable clarity, deliberateness, and precision." *Renishaw*, 158 F.3d at 1249.

To disavow or disclaim the full scope of a claim term, the patentee's statements in the specification or prosecution history must amount to a "clear and unmistakable" surrender. *Cordis Corp. v. Boston Sci. Corp.*, 561 F.3d 1319, 1329 (Fed. Cir. 2009); *see also Thorner*, 669 F.3d at 1366 ("The patentee may demonstrate intent to deviate from the ordinary and accustomed meaning of a claim term by including in the specification expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope."). "Where an applicant's statements are amenable to multiple reasonable interpretations, they cannot be deemed clear and unmistakable." *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1326 (Fed. Cir. 2013).

**C. Definiteness Under 35 U.S.C. § 112, ¶ 2 (pre-AIA) / § 112(b) (AIA)**

Patent claims must particularly point out and distinctly claim the subject matter regarded as the invention. 35 U.S.C. § 112, ¶ 2. A claim, when viewed in light of the intrinsic evidence, must "inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014). If it does not, the claim fails § 112, ¶ 2 and is therefore invalid as indefinite. *Id.* at 901. Whether a claim is indefinite is determined from the perspective of one of ordinary skill in the art as of the time the application for the patent was filed. *Id.* at 911. As it is a challenge to the validity of a patent, the failure of any claim in suit to comply with § 112 must be shown by clear and convincing evidence. *BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360, 1365 (Fed. Cir. 2017). "[I]ndefiniteness is a question of law and in effect part of claim construction." *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 517 (Fed. Cir. 2012).

"When a 'word of degree' is used, the court must determine whether the patent provides 'some standard for measuring that degree.' " *Biosig Instruments, Inc. v. Nautilus, Inc.*, 783 F.3d 1374, 1378 (Fed. Cir. 2015). " 'Reasonable certainty' does not require 'absolute or mathematical precision.' " *BASF*, 875 F.3d at 1365, quoting *Biosig*, 783 F.3d at 1381. Likewise, when a subjective term is used in a claim, the "court must determine whether the patent's specification supplies some standard for measuring the scope of the [term]." *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1351 (Fed. Cir. 2005). The standard "must provide objective boundaries for those of skill in the art." *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014).

## III. CONSTRUCTION OF AGREED TERMS

Before the *Markman* hearing, the parties agreed to the following meanings for the following terms. *See, e.g.*, Dkt. Nos. 24 and 29 (Joint Claim Construction Chart).

| TERM | AGREED CONSTRUCTION |
|---|---|
| "placing a lubricant pressurization system onto a portable platform"<br><br>('891 patent, claim 1) | Plain and ordinary meaning |
| "moving the portable platform with the lubricant pressurization system to a well site"<br><br>('891 patent, claim 1) | Plain and ordinary meaning |
| "when pressure along the high pressure lubricant line reaches a designated level"<br><br>('891 patent, claim 4) | "pressure level determined by the operator" |
| "when pressure along the high pressure line reaches a designated level"<br><br>('906 patent, claim 4) | "pressure level determined by the operator" |
| "monitoring pressure along the high pressure lubricant line"<br><br>('891 patent, claim 7) | "act of reading pressure on the high pressure lubricant line" |
| "monitoring pressure along the at least one high pressure lubricant line"<br><br>('888 patent, claims 7, 11) | "act of reading pressure along the at least one high pressure lubricant line" |
| "upper lube channel"<br><br>('888 patent, claims 1, 11) | "channel in the upper part of the body of the frac valve were grease is injected" |
| "lower lube channel"<br><br>('888 patent, claims 1, 11) | "channel in the lower part of the body of the frac valve were grease is injected" |

At the *Markman* hearing, the Court provided the following preliminary claim constructions for the following terms prior to the hearing, to which the parties agreed as their constructions at the Markman hearing:

| TERM | AGREED CONSTRUCTION |
|---|---|
| "determined formation fracturing pressure"<br><br>('891 patent, claim 1)<br>('906 patent, claim 1) | "determined hydraulic fracturing fluid pressure" |
| "determined downhole formation parting pressure"<br><br>('906 patent, claim 4) | "determined downhole pressure at which a formation will part" |
| "determined hydraulic fracturing pressure"<br><br>('906 patent, claim 5) | "determined hydraulic fracturing fluid pressure" |
| [determining a] "downhole formation parting pressure"<br><br>('888 Patent, claims 1, 11) | "downhole pressure at which a formation will part" |
| "a pressure above the surface pressure required to achieve the downhole formation parting pressure"<br><br>('888 Patent, claims 1, 11) | Plain and ordinary meaning<br><br>[no construction needed beyond "downhole formation parting pressure"] |
| "fracturing fluid injection pressure"<br><br>('888 Patent, claim 5) | "surface pumping pressure at the point of injection of fracturing fluid into the wellbore" |
| "reside on"<br><br>('906 Patent, claims 1-6) | "carried and supported by" |
| "along" / "in line along"<br><br>('906 Patent, claims 1-6)<br>('891 patent, claim 3) | "in line with" |
| "configured to be fluidically connected at one end"<br><br>('906 Patent, claim 1) | Plain and ordinary meaning |
| "the first pressure regulator switch is <u>configured to communicate with</u> frac fluid pumping pressure" | "configured to communicate with" means "configured to exchange information with the" |

| | |
|---|---|
| ('906 Patent, claim 6) | |
| "a signal from the second pressure regulator switches terminates the injection of lubricant into the lubricant line when the pre-set pressure along the lubricant line is exceeded"<br><br>('906 Patent, claim 2) | "second pressure regulator switches" means "second pressure regulator switch" |

Accordingly, the Court adopts the constructions agreed to by the parties as listed above.

## IV. CONSTRUCTION OF DISPUTED TERMS

The parties' positions and the Court's analysis as to the disputed terms within the claims of the patents-in-suit are presented below.

### A. "pre-pressurize" / "pre-pressurizing"

| Disputed Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| "pre-pressurizing a valve"<br><br>('891 Patent, claims 1-7) | Plain and ordinary meaning.<br><br>To the extent a construction is required it means "injecting lubricant into the valve under pressure before fracturing fluid is pumped through the valve." | "causing a valve to be filled with lubricant sufficient to pressurize the valve to at least a pressure above the pressure which injection of fluids will cause the rock formation to fracture hydraulically prior to pumping frac fluid through the valve, then discontinuing flow of lubricant to the respective cavities before beginning frac pumping operations" |

| | | |
|---|---|---|
| "pre-pressurize the respective cavities [to a pressure of at least a determined formation fracturing pressure]"<br><br>('891 Patent, claims 1-7)<br>('906 patent, claim 1) | Plain and ordinary meaning. | "filling the respective cavities with lubricant sufficient to pressurize the cavities to at least a pressure above the pressure which injection of fluids will cause the rock formation to fracture hydraulically prior to pumping frac fluid through the cavities, then discontinuing flow of lubricant to the respective cavities before beginning frac pumping operations" |
| "pre-pressurizing each of the plurality of fluid control valves while each of the fluid control valves is in its gate open position"<br><br>('888 Patent, claims 2-10) | Plain and ordinary meaning. | "filling each of the plurality of fluid control valves with lubricant sufficient to pressurize the plurality of fluid control valves to a pressure greater than the downhole formation parting pressure while each of the fluid control valves is in its gate open position then discontinuing flow of lubricant to the plurality of fluid control valves before beginning frac pumping operations" |

**(1) The Parties' Positions**

Plaintiff argues that the terms are clear and should be given their plain and ordinary meaning. *See, e.g.*, Dkt. No. 25, Plaintiff's Opening Claim Construction Brief, at 14-16. Plaintiff argues that "pre-pressurization" in the specification is always used in the context of injecting lubricant into the valve cavities. *Id.* at 15. Plaintiff argues that the term simply means injecting lubricant into the valves before passing pressurized frac fluid through the valve bore. *Id.* Plaintiff argues that the purpose of pre-pressurizing the valve cavities with lubricant is to keep pressurized frac fluid from entering the valve cavities. *Id.* at 16. Plaintiff argues that any specific pressure values proposed by Defendant are improper additional limitations. *Id.*

Defendant argues that the "pre-pressurizing" term is not a commonly understood term that can be given a plain and ordinary meaning. *See, e.g.*, Dkt. No. 26, Defendant's Responsive Claim

Construction Brief, at 4-8. Defendant argues that there is no extrinsic evidence defining or using pre-pressurizing. *Id.* at 5. Defendant argues that "pre-pressurizing" does not have a plain and ordinary meaning to a persona of skill in the art because "pre-pressurizing" was not a term that would have been used or understood by such a person; thus, plain and ordinary meaning is not appropriate. *Id.* at 5-6. Defendant argues that the specification requires more than just a single PSI of increased pressure; instead, pre-pressurizing requires pressurizing the valves to a pressure at least as great as a determined formation fracturing pressure. *Id.* at 6-7. Defendant further argues that pre-pressurizing must occur prior to fracturing fluid being pumped through the borehole of the valves. *Id.* Defendant further argues that pre-pressurizing should be construed to require the flow of grease to the valves be discontinued prior to frac pumping beginning. *Id.* at 8.

In its Reply, Plaintiff argues that the terms are clear and do not need construction. *See, e.g.*, Dkt. No. 28, Plaintiff's Reply Claim Construction Brief, at 2-3. Plaintiff argues that "pre-pressurization" is always used in the context of injecting lubricant into the valve cavities before frac fluid is pumped through the valve bore or before frac fluid pressure is increased. *Id.* Plaintiff argues that the purpose of pre-pressurizing the valve cavities with lubricant is to keep pressurized frac fluid from entering the valve cavities. *Id.*

**<u>(2) Analysis</u>**

The parties dispute whether the term has its plain and ordinary meaning, and more particularly dispute whether the pre-pressurize term includes limitations taught by the specification. Both parties appear to agree that the pre-pressurizing step is performed prior to pumping fracturing fluid through the valve, but dispute the remaining limitations proposed by the Defendant.

The term "pre-pressurize" or "pre-pressurizing" appears in claim 1 of the '891 patent, claim 2 of the '888 patent, and claim 1 of the '906 patent. Claim 1 of the '891 patent is exemplary and is reproduced below:

> A method of **pre-pressurizing a valve**, comprising:
>
> placing a lubricant pressurization system onto a portable platform, the lubricant pressurization system comprising:
>
> an air compressor;
>
> a lubricant reservoir and associated fluid pump;
>
> a high pressure air hose for delivering compressed air from the air compressor to the lubricant reservoir; and
>
> a high pressure lubricant line;
>
> moving the portable platform with the lubricant pressurization system to a well site;
>
> placing the high pressure lubricant line in fluid communication with one or more fluid control valves associated with a frac tree placed over a wellbore;
>
> actuating the air compressor to power the fluid pump and to **pressurize the lubricant** within the high pressure lubricant line;
>
> moving gates associated with the one or more fluid control valves into their open positions;
>
> injecting lubricating fluid from the high pressure lubricant line into a cavity of each of the fluid control valves in order to **pre-pressurize the respective cavities to a pressure of at least a determined formation fracturing pressure for a wellbore at the wellsite**;
>
> after the **pre-pressurizing**, injecting a hydraulic fracturing fluid down a central bore of the fracturing tree and down flow channels of the one or more fluid control valves while the respective cavities are packed with the lubricating fluid; and
>
> **maintaining the pressure** in the high pressure lubricant line while injecting the hydraulic fracturing fluid through the one or more fluid control valves and down the wellbore.

(emphasis added). Similar usages of the terms "pre-pressurize" and "pre-pressurizing" are found in claims 1 of the '906 patent and claim 2 of the '888 patent. Among other items, claim 1 of the '891 patent requires actuating the air compressor to pressurize the lubricant within the high pressure lubricant line, injecting lubricating fluid to pre-pressurize the valve cavities to a pressure of at least a determined formation fracturing pressure, injecting hydraulic fracturing fluid in the flow control valves, and maintaining the pressure in the high pressure lubricant line while injecting hydraulic fracturing fluid. The disputed term is included within the "injection" step, as follows: "injecting lubricating fluid from the high pressure lubricant line into a cavity of each of the fluid control valves in order to pre-pressurize the respective cavities to a pressure of at least a determined formation fracturing pressure for a wellbore at the wellsite" (emphasis added). In other words, the injecting lubricating fluid step is done to pre-pressurize the cavities, and the pre-pressurization is performed to a pressure of at least a determined formation fracturing pressure. In the claims, the pre-pressurization is a distinct term and concept from the pressure which the pre-pressurization step is intended to meet. The claim expressly states that injection of the hydraulic fluid comes after the injection of the lubricating fluid which pre-pressurizes the cavities.

The specification has numerous references to the pressurize and pre-pressurize terms. The Abstract of the '891 patent is reproduced below, and teaches that pressurized lubrication fluid is forced into the lube fittings to pre-pressurize the control valves prior to the fracturing fluid passing through the control valves:

> A method for **pre-pressurizing** fluid control valves is provided. The fluid control valves may be part of a hydraulic fracturing tree, or may be part of a so-called zipper frac manifold. In either instance, the method uses a lubrication unit for **pre-pressurizing** the cavity of a valve by injecting lubricant under high pressure. The fracturing tree or zipper frac manifold is useful for conducting hydraulic fracturing operations as part of the completion of a well. Each control valve has an upper lube fitting extending to an upper lube channel which

> communicates with an upper pocket. Similarly, each control valve includes a lower lube fitting extending to a lower lube channel which communicates with a lower pocket. **A pressurized lubricating fluid is forced into the lube fittings to pre-pressurize the control valves prior to the fracturing fluid passing through the control valves.** The method of **pre-pressurizing** the control valve restricts scarring by the fracturing fluid of the internal components of the control valve by equalizing pressure.

(emphasis added). The specification references various needs that are addressed by the alleged invention:

> Accordingly, it is desirable provide a portable lubrication unit that may be carried to a well site, and then fluidically connected to the control valves of a fracturing tree. In this way, the gate cavity may be **pre-pressurized** in such a manner as to restrict the abrasive fluids associated with the perforating process from entering the cavity and damaging the internal components of the valves. Further, a need exists for a frac tree fitted with a lubricant pump that enables lubricating fluid to be pumped into the gate cavity at very high pressure before fracturing fluid is pumped downhole. Still further, a need exists for a process of **pre-pressurizing** control valves along an injection tree or injection manifold before a hydraulic fracturing fluid is injected into a wellbore for formation fracturing.

'891 patent, col. 4, ll. 45-58 (emphasis added). The Summary of the Invention section references the pre-pressurization concepts of the application:

> The upper pocket and/or the lower pocket are configured to be pressurized by a lubricating fluid that is placed under pressure. The **pre-pressurization** is at least as great as a determined formation parting pressure, and preferably at least as great as a hydraulic fracturing pressure. **Pre-pressurization** occurs by passing the lubricating fluid through the upper lube fitting, through the lower lube fitting, or both, and into the gate cavity. **Pre-pressurization** is done before hydraulic fluid is passed through the fracturing tree.
>
> Preferably, each of the at least one control valves further comprises an upper flange and a lower flange, with each of the upper and lower flanges configured to be mechanically and sealingly connected in line with the body by means of a plurality of bolts. Preferably, the fracturing tree comprises several control valves in series, each of which has an upper flange and a lower flange, and each of which is pre-pressurized.
>
> The tree further comprises a reservoir of lubricant, and a high pressure pump. The pump is configured to pump the lubricating fluid from the reservoir, through the lube fittings and into the cavity pockets of the gates. Appropriate pressure sensors, pressure gauges, lines and fittings are provided for pumping as described above.

> A method of pressurizing at least one fluid control valve is also provided herein. Pressurization is provided to each of the control valves along a fracturing tree, with the valves being in their valve open positions during pressurization. Thereafter, hydraulic fracturing fluid is injected through the valves and down into the wellbore. In this way, fracturing fluid is directed through the flow channel while high pressure provided by the lubricating fluid within the upper pocket and/or lower pocket of the gate cavity substantially prevents the hydraulic fracturing fluid from traveling around the gate and scarring the seats and related hardware.

'891 patent, col. 6, ll. 26-59 (emphasis added). The specification discloses an embodiment of the pre-pressurization steps:

> Once the high pressure lines 300 are properly connected to the lube fittings 270U, 270L, a pressure regulator 330 is set to an air pressure above a formation parting pressure. Moreover, the pressure regulator 330 is set to an air pressure that is above a desired fracturing pumping pressure. The high pressure pump 320 is then activated to pressurize the high pressure lines 300, wherein the pressure regulator 330 turns off the pump 320 when the set pressure is achieved through the sensing of pressure switches. Hence, lubricating or cleaning fluid passes through the high pressure lines 300 to the upper 270U and lower 270L lube fittings.
>
> The lubrication fluid flowing through the lube fittings 270U, 270L passes into the upper and lower lube channels and into the upper gate pocket 252 and/or the lower gate pocket 254, depending on the position of the gate 260. The lubrication fluid thus fills and pressurizes the space between the gate 260 and the gate cavity 250. In this way, the valve 210 is **pre-pressurized** to a high pressure so that the incoming fracturing fluid and its proppant material does not flow about the gate 260, causing scarring or other damage to the gate 260 and its seat 267 or other internal components along the bore 208. Preferably, **pre-pressurization** is to a pressure that is 2%, or optionally 3 to 5%, greater than the determined hydraulic fracturing pressure. This minimizes the flow of the abrasive fracturing fluid into the cavity 250, and keeps hydraulic fracturing fluid moving through the flow channels 208, 244.

'891 patent, col. 11, ll. 39-64 (emphasis added). The specification is clear that the pre-pressurization step is done before hydraulic fluid is passed through the fracturing tree. The specification is clear that pre-pressurization may be at least as great as a hydraulic fracturing pressure. In one embodiment, pre-pressurization is to a pressure that is 2% or optionally 3 to 5% greater than the determined hydraulic fracturing pressure.

On balance, the Court rejects Defendant's arguments. The claim language does not require the limitations proposed by the Defendant. In a separate limitation, the claims are clear that the pre-pressurization step is performed before hydraulic fluid is passed through the fracturing tree. In other words, the cavities are pressurized prior to pumping fracturing fluid through the valves. This is consistent with the embodiments described in the specification. Further, the claim – in a separate limitation – requires that the pre-pressurization step is performed "to a pressure of at least a determined formation fracturing pressure." In other words, the particular pressure targeted by the pre-pressurization step is not an inherent meaning or element of the pre-pressure term but is a separate limitation. This understanding is consistent with the specification, which teaches various pressure limitations that the pre-pressurization step may reach, but does not necessarily limit or define the pre-pressurize term itself to a particular pressure. Defendant's construction of embedding a specific pressure limitation in the pre-pressurization term would render the additional claim language in the claims superfluous.

Further, the Court finds Defendant's other proposed limitations to this term (such as the proposed discontinuation step) are non-limiting embodiments of the application that should not be imported in the claims. The Federal Circuit has consistently held that "particular embodiments appearing in the written description will not be used to limit claim language that has broader effect." *Innova/Pure Water,* 381 F.3d at 1117. Even where a patent describes only a single embodiment, absent a "clear intention to limit the claim scope," it is improper to limit the scope of otherwise broad claim language by resorting to a patent's specification. *Id.*; *see also Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004) (citing numerous cases rejecting the contention that the claims of the patent must be construed as being limited to the single embodiment disclosed and stating that claims are to be given their broadest meaning unless there

is a clear disclaimer or disavowal); *Comark Commc'ns, Inc. v. Harris Corp.,* 156 F.3d 1182, 1187 (Fed. Cir. 1988) ("Although the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims."); *Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, 632 F.3d 1246, 1254 (Fed. Cir. 2011) ("even where a patent describes only a single embodiment, claims will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words of expressions of manifest exclusion or restriction."); *Phillips*, 415 F.3d at 1323.

Overall, the Court rejects Defendant's construction. On its face, the claim language is clear. The claim language does not require the limitations proposed by Defendant. Further, the Court finds that there is no lexicography, disavowal or disclaimer in the specification to require the limitations suggested by Defendant, and rejects Defendant's arguments to the contrary. The Court finds that one of ordinary skill in the art, based upon the specification and the claims, would understand the disputed pre-pressurize term to simply mean that it is pressurized prior to pumping fracturing fluid through the valve. Such a construction is supported by the claims and the specification.

The Court hereby construes the term "**pre-pressurizing**" in the '891 patent to mean "**pressurizing prior to pumping fracturing fluid through the valve.**"

The Court hereby construes the term "**pre-pressurize**" in the '891 patent and '906 patent to mean "**pressurize prior to pumping fracturing fluid through the valve.**"

The Court hereby construes the term "**pre-pressurizing**" in the '888 patent to mean "**pressurizing prior to pumping fracturing fluid through the valve.**"

**B. "pressurize the lubricant"**

| **Plaintiff's Proposed Construction** | **Defendant's Proposed Construction** |
|---|---|
| Plain and ordinary meaning. | "pressurize the lubricant to at least a determined formation fracturing pressure" |

**(1) The Parties' Positions**

Plaintiff argues that the term is clear and should be given its plain and ordinary meaning. *See, e.g.*, Dkt. No. 25, Plaintiff's Opening Claim Construction Brief, at 18. Plaintiff argues that "pressurize" simply means to "increase the internal pressure of a closed pressure." *Id.* Plaintiff argues that the term does not require a specific pressure. *Id.* Plaintiff argues that Defendant's proposed construction is not based on the claims. *Id.*

Defendant argues that the claims provide no guidance on how much pressure is required to satisfy the claim limitation of "actuating the air compressor…to pressurize the lubricant." *See, e.g.*, Dkt. No. 26, Defendant's Responsive Claim Construction Brief, at 9. Defendant argues that any pressure is not sufficient for this term, and that it must be a "high pressure" as detailed in the specification. *Id.* Defendant argues that its construction is consistent with the purpose of the invention, which is to pre-pressurize valves to a pressure above a determined formation fracturing pressure. *Id.* at 10.

In its Reply, Plaintiff argues that Defendant is seeking to import the limitation of "to at least a determined formation fracturing pressure." *See, e.g.*, Dkt. No. 28, Plaintiff's Reply Claim Construction Brief, at 3-4. Plaintiff argues that when a specific pressure is required, the claim element specifically states it, but when the claim does not require a specific pressure, the opposite intent is demonstrated. *Id.* Plaintiff argues that the element does not require a specific level of pressure, so the value of the pressure is not part of this limitation. *Id.*

**(2) Analysis**

The parties dispute whether the term has its plain and ordinary meaning, and more particularly dispute whether "pressurize" requires a particular pressure.

The term "pressurize the lubricant" is found in claim 1 of the '891 patent, which is reproduced below:

> A method of **pre-pressurizing a valve**, comprising:
>
> placing a lubricant pressurization system onto a portable platform, the lubricant pressurization system comprising:
>
> an air compressor;
>
> a lubricant reservoir and associated fluid pump;
>
> a high pressure air hose for delivering compressed air from the air compressor to the lubricant reservoir; and
>
> a high pressure lubricant line;
>
> moving the portable platform with the lubricant pressurization system to a well site;
>
> placing the high pressure lubricant line in fluid communication with one or more fluid control valves associated with a frac tree placed over a wellbore;
>
> **actuating the air compressor to power the fluid pump and to <u>pressurize the lubricant</u> within the high pressure lubricant line**;
>
> moving gates associated with the one or more fluid control valves into their open positions;
>
> injecting lubricating fluid from the high pressure lubricant line into a cavity of each of the fluid control valves in order to **pre-pressurize the respective cavities to a pressure of at least a determined formation fracturing pressure for a wellbore at the wellsite**;
>
> after the **pre-pressurizing**, injecting a hydraulic fracturing fluid down a central bore of the fracturing tree and down flow channels of the one or more fluid control valves while the respective cavities are packed with the lubricating fluid; and

> **maintaining the pressure** in the high pressure lubricant line while injecting the hydraulic fracturing fluid through the one or more fluid control valves and down the wellbore.

(emphasis added). The full phrase that includes the disputed term comprises "actuating the air compressor to power the fluid pump and to <u>pressurize the lubricant</u> within the high pressure lubricant line" (emphasis added). While other terms in the claim requires a certain pressure, the "actuating … to pressurize the lubricant…" phrase does not expressly contain a specific pressure limitation.

The specification describes a high pressure pump and a high pressure lubricating line that forms a high pressure pumping system of the disclosed embodiment:

> Each of the high pressure lubricating (or "lube") lines 300 is coupled to a high pressure pump 320. A viscous high pressure cleaning or lubricating fluid is pressurized by the high pressure pump 320. The lubricating fluid is then pumped through the high pressure lines 300 into the upper 270U and lower 270L lube fittings where it is conveyed through the lube channels and into the upper 252 and/or lower 254 gate pockets, respectively.
>
> The high pressure pump 285 and the high pressure lines 200 may be part of a high pressure pumping system which will operate off of an electrical or pneumatic power source. The high pressure system will include a high flow air compressor having a pressure regulator with a pressure gauge. The high pressure pumping system will also include an air lubricator, a lubrication fluid, an in-line check valve and pressure switch. Optionally, the high pressure pumping system will include an air dryer.
>
> In one aspect, the high pressure pump 320 pumps lubricating fluid through a single lubrication line 325 and into a manifold 310. From the manifold 310, lubricating fluid is distributed to appropriate high pressure lines 310 and then delivered to the upper 270U and lower 270L lube fittings. Where three or four flow control valves 210 are placed in a frac tree 200 in series, the manifold 310 may distribute lubricating fluid to corresponding sets of upper 270U and lower 270L lube fittings for each valve 210.

'891 patent, col 10, l. 46 – col. 11, l. 4. It is clear from the specification and the claims that the lubricant may be pressurized to a high pressure. It is not clear from the specification whether when the pump is turned on or actuated, that the lubricant within the high pressure lubricant line needs

to immediately exceed a certain pressure limitation, or whether the high pressure lubricant line meets that pressure later on during the injecting or pre-pressurization steps.

On balance, the Court rejects Defendant's arguments. The claim language does not require the pressure limitation proposed by the Defendant. While the lubricant may be pressurized to at least a determined formation fracturing pressure, nothing in the claims requires that certain pressure in the actuating step. In contrast, for the subsequent and separately recited "pre-pressurize" limitation, the claim expressly requires pre-pressurizing the respective cavities to a pressure of at least a determined formation fracturing pressure. Such a limitation is noticeably missing in the "pressurize the lubricant" term. The disputed phrase simply references actuating an air compressor to create pressure in the lubricant line and describes a beginning step in the pre-pressurizing process. The claim element requires only that the air compressor is actuated to power the fluid pump and to pressurize the lubricant within the high lubricant line. This element does not require a specific level of pressure. While the specification describes a high pressure pumping system, it does not require a particular pressure to be met at the actuating step.

Further, even if the only embodiment in the patent required a certain pressure in the actuating step, the Court finds that the examples in the specification are non-limiting embodiments of the invention that should not be imported into the claims. The Federal Circuit has consistently held that "particular embodiments appearing in the written description will not be used to limit claim language that has broader effect." *Innova/Pure Water,* 381 F.3d at 1117. Even where a patent describes only a single embodiment, absent a "clear intention to limit the claim scope," it is improper to limit the scope of otherwise broad claim language by resorting to a patent's specification. *Id.*; *see also Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004) (citing numerous cases rejecting the contention that the claims of the patent must be

construed as being limited to the single embodiment disclosed and stating that claims are to be given their broadest meaning unless there is a clear disclaimer or disavowal); *Comark Commc'ns, Inc. v. Harris Corp.,* 156 F.3d 1182, 1187 (Fed. Cir. 1988) ("Although the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims."); *Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, 632 F.3d 1246, 1254 (Fed. Cir. 2011) ("even where a patent describes only a single embodiment, claims will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words of expressions of manifest exclusion or restriction."); *Phillips*, 415 F.3d at 1323.

Overall, the Court rejects Defendant's construction. On its face, the claim language is clear. The claim language does not require the limitations proposed by Defendant. Further, the Court finds that there is no lexicography, disavowal or disclaimer in the specification to require the limitations suggested by Defendant, and rejects Defendant's arguments to the contrary. The Court finds that one of ordinary skill in the art, based upon the specification and the claims, would understand the disputed term to have its plain and ordinary meaning. The plain meaning of the "pressurize" term simply means to increase the pressure or to "increase the internal pressure of a closed vessel." The Court finds that construction proper for this term and thereby adopts that construction. Because this resolves the dispute between the parties, the Court finds that no other terms within the disputed phrase requires further construction. *See U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) ("Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement. It is not an obligatory exercise in redundancy."); *see also O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351,

1362 (Fed. Cir. 2008) ("[D]istrict courts are not (and should not be) required to construe every limitation present in a patent's asserted claims.") (*citing U.S. Surgical*, 103 F.3d at 1568).

The Court hereby construes the term "**pressurize the lubricant**" in the '891 patent to have its **plain and ordinary meaning**.

### C. "maintaining / maintain the pressure"

| **Disputed Term** | **Plaintiff's Proposed Construction** | **Defendant's Proposed Construction** |
|---|---|---|
| "maintaining the pressure"<br><br>('891 Patent, claim 1) | Plain and ordinary meaning.<br><br>To the extent a construction is required it means "continuation of pressure or keeping of continuous pressure in the high lubricant line" | "maintaining a pressure of at least a determined formation fracturing pressure in the high pressure lubricant line" |
| "maintain pressure"<br><br>('906 Patent, claim 5) | Plain and ordinary meaning. | "maintain the same level of pressure in the high pressure lubricant line" |
| "maintaining pressure"<br><br>('888 Patent, claim 7, 11) | Plain and ordinary meaning. | "maintaining the same level of pressure in the high pressure lubricant line" |

**<u>(1) The Parties' Positions</u>**

Plaintiff argues that the terms are clear and should be given their plain and ordinary meaning. *See, e.g.*, Dkt. No. 25, Plaintiff's Opening Claim Construction Brief, at 18-19. Plaintiff argues that the term "maintaining pressure" simply means the continuation of some pressure, as opposed to allowing the pressure to revert to ambient pressure. *Id.* Plaintiff argues that the term does not require a specific pressure. *Id.* Plaintiff argues that Defendant's proposed construction is not based on the claims. *Id.*

Defendant argues that the claims provide no guidance on how much pressure is required to satisfy the claim limitation *See, e.g.*, Dkt. No. 26, Defendant's Responsive Claim Construction

Brief, at 13-14. Defendant argues that without a construction, it is not known how much pressure must be maintained in the high pressure lubricant line to satisfy the claim limitation. *Id.* at 13. Defendant argues that its construction is consistent with the deposition testimony of Plaintiff's experts. *Id.* at 14. Defendant argues that maintaining the pressure requires keeping the same amount of pressure in the high pressure lubricant line, i.e., at least a determined formation fracturing pressure. *Id.*

In its Reply, Plaintiff argues that the terms are clear on their face and do not need construction. *See, e.g.*, Dkt. No. 28, Plaintiff's Reply Claim Construction Brief, at 7-8. Plaintiff argues that Defendant is seeking to import the limitation of "to at least a determined formation fracturing pressure." *Id.* Plaintiff argues that all that is required is that whatever pressure is within the high pressure lubricant line is maintained. *Id.* Plaintiff argues that maintaining the pressure is about the relationship between the frac fluid pressure and the grease pressure, and not necessarily whether the pressure within the line is maintained at the formation fracturing pressure. *Id.*

**(2) Analysis**

The parties dispute whether the terms have their plain and ordinary meaning, and more particularly dispute whether "maintaining the pressure" requires a particular pressure.

The terms "maintaining the pressure," "maintain pressure," and "maintaining pressure" are found in claim 1 of the '891 patent, claim 5 of the '906 patent, and claims 7 and 11 of the '888 patent, respectively. Claim 1 of the '891 patent is exemplary and is reproduced below:

> A method of pre-pressurizing a valve, comprising:
>
> placing a lubricant pressurization system onto a portable platform, the lubricant pressurization system comprising:

an air compressor;

a lubricant reservoir and associated fluid pump;

a high pressure air hose for delivering compressed air from the air compressor to the lubricant reservoir; and

a high pressure lubricant line;

moving the portable platform with the lubricant pressurization system to a well site;

placing the high pressure lubricant line in fluid communication with one or more fluid control valves associated with a frac tree placed over a wellbore;

actuating the air compressor to power the fluid pump and to pressurize the lubricant within the high pressure lubricant line;

moving gates associated with the one or more fluid control valves into their open positions;

injecting lubricating fluid from the high pressure lubricant line into a cavity of each of the fluid control valves in order to pre-pressurize the respective cavities to a pressure of at least a determined formation fracturing pressure for a wellbore at the wellsite;

after the pre-pressurizing, injecting a hydraulic fracturing fluid down a central bore of the fracturing tree and down flow channels of the one or more fluid control valves while the respective cavities are packed with the lubricating fluid; and

**maintaining the pressure in the high pressure lubricant line while injecting the hydraulic fracturing fluid through the one or more fluid control valves and down the wellbore**.

(emphasis added). Similar usages of the "maintain" terms are found in claim 5 of the '906 patent and claims 7 and 11 of the '888 patent. Among other items, the claim requires actuating the air compressor to pressure the lubricant within the high pressure lubricant line, injecting lubricating fluid to pre-pressurize valve cavities to a pressure of at least a determined formation fracturing pressure, injecting hydraulic fracturing fluid in the valves, and "maintaining the pressure in the

high pressure lubricant line while injecting hydraulic fracturing fluid…" The maintaining step does not expressly require a specific pressure to be maintained.

The specification does not use the word "maintain." The specification describes a high pressure pump and a high pressure lubricating line. *See, e.g.*, '891 patent, col 10, l. 46 – col. 11, l. 4. The specification describes shutting off the air compressor if a certain pre-set pressure is reached in the lubrication line. *Id.* at col. 13, ll. 28-38 and ll. 60-65. The specification describes building pressure in the valve bodies which in turn builds pressure to the lubrication line and back to the fluid pump. *Id.* at col. 14, ll. 3-12. It is clear from the specification and the claims that the lubricant may be pressurized to a high pressure. However, nothing in the specification requires maintaining or continuing a specific pressure in the lubrication line.

On balance, the Court rejects Defendant's arguments. The claim language does not require the pressure limitation proposed by the Defendant. While the lubricant line may be maintained at a particular pressure or at a pressure to at least a determined formation fracturing pressure, nothing in the claims requires that certain pressure to be maintained in the maintaining step. The maintaining step does not require "keeping the same amount of pressure," "maintaining the same level of pressure," nor maintaining a "formation fracturing pressure." The disputed phrase simply requires whatever pressure is in the line to be maintained.

Overall, the Court rejects Defendant's construction. The claim language does not require the limitations proposed by Defendant. Further, the Court finds that there is no lexicography, disavowal or disclaimer in the specification to require the limitations suggested by Defendant, and rejects Defendant's arguments to the contrary. The Court finds that one of ordinary skill in the art, based upon the specification and the claims, would understand the disputed term to have its plain and ordinary meaning. Nevertheless, to resolve the dispute between the parties, on balance, the

Court finds that a construction as to the term is necessary and helpful. Consistent with the term's plain and ordinary meaning, maintaining the pressure simply means to continue the pressure in the line. It does not require a particular pressure to be maintained, and it does not require maintaining the same pressure level within the line.

The Court hereby construes the term "**maintaining the pressure**" in the '891 patent to mean "**continuing the pressure**."

The Court hereby construes the term "**maintain pressure**" in the '906 patent to mean "**continue the pressure**."

The Court hereby construes the term "**maintaining pressure**" in the '888 patent to mean "**continuing pressure**."

### D. "packed" [with lubricating fluid]

| **Plaintiff's Proposed Construction** | **Defendant's Proposed Construction** |
|---|---|
| Plain and ordinary meaning.<br><br>To the extent that a construction is required: "filled with a large amount of lubricating fluid relative to the volume of the valve cavities" | "filled to capacity [with lubricating fluid]" |

#### (1) The Parties' Positions

Plaintiff argues that the term "packed" is well understood and does not need construction, and thus should be given its plain and ordinary meaning. *See, e.g.*, Dkt. No. 25, Plaintiff's Opening Claim Construction Brief, at 23-24. Plaintiff argues that one of skill in the art would understand that the respective cavities of the fluid control valves are filled with lubricating fluid sufficient to prevent frac fluid out of the valve cavities. *Id.* at 23. Plaintiff argues that Defendant cannot point to any disclaimer or lexicography within the specification that would require construing "packed"

beyond its plain and ordinary meaning. *Id.* Plaintiff argues that Defendant's citation to the specification is misplaced. *Id.* at 24. Nothing in the specification suggests or requires the gate cavities to be "filled to capacity." *Id.*

Defendant argues that neither the specification nor claims provide guidance on how much lubricant is necessary to "pack" a valve cavity. *See, e.g.*, Dkt. No. 26, Defendant's Responsive Claim Construction Brief, at 11-13. Defendant argues that Plaintiff's proposed construction renders the term indefinite. *Id.* at 12. Defendant argues that Plaintiff's expert testified that the amount of grease needed will vary and provides no clarity to the term's limitations. *Id.* Defendant argues that the specification's reference to "fills and pressurizes the space" is consistent with its proposed construction of "filled to capacity." *Id.*

In its Reply, Plaintiff argues that a fluid control valve is packed when it is sufficiently filled to keep frac fluid out of the valve body. *See, e.g.*, Dkt. No. 28, Plaintiff's Reply Claim Construction Brief, at 5-6. Plaintiff argues that to keep fracturing fluid out of the valve cavities, the grease operator needs to be able to build pressure in the grease line and valve cavities. *Id.* at 5. If there are air pockets or other filler in the valve cavities, then less grease is needed; if there is positive pressure between the valve cavities and the valve bore, then the valves are sufficiently packed. *Id.* Plaintiff argues that there is not a volume requirement for "packed," but more of a "pressure" requirement – the lubricating fluid fills the valve cavities sufficient to build pressure. *Id.* at 5-6. Plaintiff argues that there is no requirement in the claims or the specification to require the cavity to be "filled to capacity." *Id.* at 6.

**(2) Analysis**

The parties dispute whether the term has its plain and ordinary meaning, and more particularly dispute whether "packed" means just "filled" or "filled to capacity." In effect, the parties argue how much is enough to be considered to be "packed."

The term "packed" appears in claim 1 of the '891 patent. That claim is reproduced below:

> A method of pre-pressurizing a valve, comprising:
>
> placing a lubricant pressurization system onto a portable platform, the lubricant pressurization system comprising:
>
> an air compressor;
>
> a lubricant reservoir and associated fluid pump;
>
> a high pressure air hose for delivering compressed air from the air compressor to the lubricant reservoir; and
>
> a high pressure lubricant line;
>
> moving the portable platform with the lubricant pressurization system to a well site;
>
> placing the high pressure lubricant line in fluid communication with one or more fluid control valves associated with a frac tree placed over a wellbore;
>
> actuating the air compressor to power the fluid pump and to pressurize the lubricant within the high pressure lubricant line;
>
> moving gates associated with the one or more fluid control valves into their open positions;
>
> injecting lubricating fluid from the high pressure lubricant line into a cavity of each of the fluid control valves in order to pre-pressurize the respective cavities to a pressure of at least a determined formation fracturing pressure for a wellbore at the wellsite;
>
> after the pre-pressurizing, injecting a hydraulic fracturing fluid down a central bore of the fracturing tree and down flow channels of the one or more fluid control valves while the respective cavities are **packed with the lubricating fluid**; and

> maintaining the pressure in the high pressure lubricant line while injecting the hydraulic fracturing fluid through the one or more fluid control valves and down the wellbore.

(emphasis added). Claim 1 simply states that the cavities are "packed with the lubricating fluid" while the hydraulic fracturing fluid is injected into the fracturing tree. The claim does not expressly require the cavities to be filled to capacity.

The specification does not use the term "packed." Instead, the specification uses the term "fills":

> The lubrication fluid flowing through the lube fittings 270U, 270L passes into the upper and lower lube channels and into the upper gate pocket 252 and/or the lower gate pocket 254, depending on the position of the gate 260. The lubrication fluid thus **fills and pressurizes** the space between the gate 260 and the gate cavity 250. In this way, the valve 210 is pre-pressurized to a high pressure so that the incoming fracturing fluid and its proppant material does not flow about the gate 260, causing scarring or other damage to the gate 260 and its seat 267 or other internal components along the bore 208. Preferably, pre-pressurization is to a pressure that is 2%, or optionally 3 to 5%, greater than the determined hydraulic fracturing pressure. This minimizes the flow of the abrasive fracturing fluid into the cavity 250, and keeps hydraulic fracturing fluid moving through the flow channels 208, 244.

'891 patent, col. 11, ll. 50-64 (emphasis added). The specification states that the lubrication fluid "fills and pressurizes" the space between the valve gate and valve cavity, thus pre-pressurizing the valve to a high pressure. *See id.* The specification uses the term "fills," and does not expressly require the cavities to be "filled to capacity."

On balance, the Court rejects Defendant's arguments and construction. The claim language does not require the limitation proposed by the Defendant. Nothing in the claims or specification requires that the valve cavities be "filled to capacity." While the specification does not use the term "packed," it does mention that the valve cavities can be "filled and pressurized" with lubricating fluid. The claim language does not require the limitation proposed by Defendant.

Further, the Court finds that there is no lexicography, disavowal or disclaimer in the specification to require the limitations suggested by Defendant, and rejects Defendant's arguments to the contrary. The Court finds that one of ordinary skill in the art, based upon the specification and the claims, would understand the disputed term to have its plain and ordinary meaning. Nevertheless, to resolve the dispute between the parties, on balance, the Court finds that a construction as to the term is necessary and helpful. Consistent with the term's plain and ordinary meaning, packed, in this context, simply means filled; it does not require being filled to capacity.

The Court hereby construes the term "**packed**" in the '891 patent to mean "**filled**."

**E. "pre-set pressure"**

| **Plaintiff's Proposed Construction** | **Defendant's Proposed Construction** |
|---|---|
| Plain and ordinary meaning. | "a pressure chosen and set by the operator" |

**(1) The Parties' Positions**

Plaintiff argues that the term "pre-set pressure" should be given its plain and ordinary meaning. *See, e.g.*, Dkt. No. 25, Plaintiff's Opening Claim Construction Brief, at 17. Plaintiff argues that the claims say nothing about who chooses the pressure. *Id.* The pressure may be chosen and set by the operator, but this is not a requirement in the claims. *Id.* Where and how the pre-setting occurs and who sets it are not dictated by the claims. *Id.*

Defendant argues that the claims do not define or describe what amount of pressure is an appropriate "pre-set pressure." *See, e.g.*, Dkt. No. 26, Defendant's Responsive Claim Construction Brief, at 16-17. Defendant argues that Plaintiff's proposed construction is impractical and a construction is needed to provide meaning to the term. *Id.* Defendant argues that Plaintiff's positions on this term are inconsistent, as it may refer to a single PSI or any pressure above

pumping pressure. *Id.* at 17. Defendant argues that its proposed construction is consistent with the testimony of Plaintiff's experts, who both testified that somebody has to determine the correct pressure to use as the pre-set pressure then set the regulator to the pre-set pressure. *Id.*

In its Reply, Plaintiff argues that the "pre-set pressure" term does not need construction. *See, e.g.*, Dkt. No. 28, Plaintiff's Reply Claim Construction Brief, at 10. Plaintiff argues that the claims do not say anything about who chooses the pressure. *Id.* Plaintiff argues that the limitation is met if the lubricating system is configured with a pre-set pressure; where and how the pre-setting occurs and who sets the pressure are not dictated by the claims. *Id.* Plaintiff argues that there is no contradictory testimony about pre-set pressure – while the pre-set pressure can be theoretically any pressure, the preferred embodiment is set above pumping pressure, and there is a relationship between the frac pressure and the grease pressure. *Id.*

**(2) Analysis**

The parties dispute whether the term has its plain and ordinary meaning, and more particularly dispute whether a "pre-set pressure" must be chosen by the "operator."

The term "pre-set pressure" appears in claims 1 and 2 of the '906 patent and claim 8 of the '888 patent. Claim 1 of the '906 patent is reproduced below:

> A portable lubrication unit, comprising:
>
> a portable platform;
>
> an air compressor;
>
> a lubricant reservoir and associated fluid pump powered by the air compressor via an air hose;
>
> a first pressure regulator switch along the air hose;
>
> a high pressure air hose for delivering compressed air from the air compressor to the fluid pump when the air compressor is actuated;

> a high pressure lubricant line configured to be fluidically connected at one end to the lubricant reservoir, and at a second opposite end to a plurality of lube channels associated with fluid control valves along a fracturing tree placed over a wellbore at a wellsite; and
>
> a second pressure regulator switch along the high pressure lubricant line, configured to send a signal when a **pre-set pressure** along the lubricant line is exceeded;
>
> wherein:
>
> the air compressor, the lubricant reservoir and the high pressure air hose reside on the portable platform;
>
> the air compressor is configured such that, upon actuation, lubricant is carried through the high pressure lubricant line, to the connected lube channels, and into cavities associated with each of the fluid control valves in order to pre-pressurize the respective cavities to a pressure of at least a determined formation fracturing pressure for the wellbore.

(emphasis added). On its face, where and how the pre-setting occurs and who sets it are not dictated by the claim. Instead, a second switch along the lubricant line is merely configured to send a signal "when a pre-set pressure along the lubricant line is exceeded." Claim 8 of the '888 patent is similar, and in relative context, requires "cutting off pressure along a high pressure lubricant line if a pre-set pressure along the high pressure lubricant line is exceeded" (emphasis added).

The specification describes what "pre-set pressure" means in the context of the application:

> Ideally, the fluid pressure regulator will be set above pumping pressures. The pressure regulator switch is set to shut off power source if a **pre-set pressure** is reached.
>
> * * *
>
> In one aspect, the pressure switch 650 generates an electrical signal when a **certain pressure level** in the lubrication line 635 is reached.

'891 patent, col. 13, ll. 63-65 and ll. 34-36, respectively (emphasis added). The specification does not require an operator to set and choose the pre-set pressure.

The Court rejects Defendant's proposed construction and arguments. The claims do not dictate where and how the pre-setting of the pressure occurs. The claims do not dictate who sets the pre-set pressure, much less an operator. The pre-set pressure could be chosen by the operator, but the claims do not require that the pressure be set by the operator. In general, the limitation is met if the lubricating system is configured with a pre-set pressure, and who sets the pressure is not dictated by the claims. Requiring that it be set by an "operator" would merely inject ambiguity as to how to determine who the operator is on any given well.

On its face, the claim language is clear. The claim language does not require the limitations proposed by Defendant. Further, the Court finds that there is no lexicography, disavowal or disclaimer in the specification to require the limitations suggested by Defendant, and rejects Defendant's arguments to the contrary. The Court finds that one of ordinary skill in the art, based upon the specification and the claims, would understand the disputed term to have its plain and ordinary meaning. Nevertheless, to resolve the dispute between the parties, on balance, the Court finds that a construction as to the term is necessary and helpful. Simply put, and consistent with the term's plain and ordinary meaning, a pre-set pressure is one that has been previously set.

The Court hereby construes the term "**pre-set pressure"** in the '891 patent means a "**pressure level that has been previously set**."

## V. CONCLUSION

The Court adopts the above constructions set forth in this opinion for the disputed terms of the patents-in-suit. The parties are ordered that they may not refer, directly or indirectly, to each other's claim construction positions in the presence of the jury. Likewise, the parties are ordered to refrain from mentioning any portion of this opinion, other than the actual definitions adopted by

the Court, in the presence of the jury. Any reference to claim construction proceedings is limited to informing the jury of the definitions adopted by the Court.

The parties are reminded that the Docket Control Order requires them to confer and file a Joint Notice within **14 days** of this Order regarding mediation.

**SIGNED this 2nd day of February, 2024.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE